## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Civil Division

**DAVID M. DORSEN**
3501 Davis Street, N.W.
Washington, DC 20007
Tel: 202-965-2085
Dorsen35@aol.com,

   **Plaintiff,**

   v.                                                **CASE NO.**

**JIM COLEMAN INFINITI**
10400 Auto Park Avenue
Bethesda, MD 20817
Tel: 301-469-2100,

   **Defendant.**

### COMPLAINT FOR DAMAGES

(Violation of Maryland Code Title 14, § 14-1001 et seq.; Violation of Montgomery County
Laws Ch. 31A, Articles I - III; Tortious Conduct and Misrepresentation; Negligent,
Reckless, and Intentional Infliction of Emotional Distress; Punitive Damages
for Fraud, Reckless, Outrageous, and Wanton Conduct)

### PARTIES, JURISDICTION, AND VENUE

1.   This Court has jurisdiction under 28 U.S.C. § 1332.  Venue is in this Court by

virtue of 28 U.S.C. § 1391(b).

2.   This action is brought by plaintiff David M. Dorsen, who is an adult citizen and

resident of the District of Columbia.

3.   Upon information and belief, defendant Jim Coleman Infiniti is a corporation that is

incorporated in the State of Maryland and whose principal place of business is the State of

Maryland.  Defendant is an Infiniti automobile dealership in Montgomery County in the State

of Maryland that includes facilities for the sale of new and used automobiles and facilities to service and repair Infiniti automobiles.  Defendant does business in and advertises in the District of Columbia.  A substantial part of the events and omissions giving rise to the claims in this case arose in the District of Columbia and the property that is the subject to this action is located in the District of Columbia.

4.  Defendant is an automobile repair facility under the laws of the State of Maryland, including Maryland Code Title 14, § 14-1001 et seq. and regularly engages in repair and maintenance of automobiles under the laws and regulations of Montgomery County, including Ch. 31A, Articles I – III, for automobiles that are owned by persons in the District of Columbia and are registered in the District of Columbia.

## FACTS

5.  Plaintiff owns a 2011 Infiniti G-37 convertible, District of Columbia license plate MANGIA, Vehicle Identification Number JN1CV6FE7BM952898 (hereinafter the Automobile).  Plaintiff purchased the Automobile from defendant in July 2011.  Plaintiff keeps the Automobile in close proximity to his home or office, both of which are in the District of Columbia.

6.  Starting approximately March 1, 2016, the left rear tire of the Automobile leaked air slowly. The warning icon on the dash board would indicate that tire pressure was low.  Plaintiff injected air into the tire three or four times during the first half of March to maintain appropriate pressure.  By mid-March the speed of the loss of air had increased.  The icon would go off when plaintiff injected air into the low tire.   The mileage on the Automobile was about 33,900.  The Automobile was due for routine maintenance.

7.    On Wednesday, March 16, 2016, plaintiff telephoned defendant from his office in the District of Columbia and asked for the service department. A person who identified himself as Shane Seay answered the telephone and asked if he could help plaintiff. Plaintiff told Seay, who was an employee and agent of defendant, that he wanted to schedule the routine mile service for the Automobile and that he was having a problem with a rear tire that was leaking air and wanted the tires checked. Plaintiff arranged to bring his car in at 10:00 a.m. on March 17, 2016.

8.    Plaintiff drove to defendant from the District of Columbia and arrived at approximately 10:00 a.m. on Thursday, March 17, 2016. Seay was waiting for plaintiff in front of the building where service managers sat. Plaintiff repeated to Seay what he told him on the telephone. By that time the left rear tire of the Automobile had flattened. Seay told plaintiff that defendant would perform the necessary servicing of the Automobile and that it would be ready that afternoon around 4:00 p.m. Plaintiff replied that he would pick it up the following morning. Defendant provided plaintiff with a substitute vehicle and he departed.

9.    Defendant did not provide plaintiff with a written or oral estimate or advise plaintiff that he was entitled to receive one on request. Defendant showed plaintiff no documents or writings and did not ask plaintiff to sign any document and plaintiff signed no document.

10.    At approximately 9:30 a.m. on Friday, March 18, 2016, plaintiff received a call at his office from someone who identified himself as Robert Mensah, who said that he was on his cell phone and heading to defendant's service department. Mensah, who was an employee and agent of defendant, said that he was in charge of servicing the Automobile, but gave no explanation for the substitution. Mensah told plaintiff that the linings on the brakes on

Automobile were very low on both the front and back (1/32 of an inch on one and 2/32 of an inch on the other) and that they had to be replaced. Plaintiff expressed surprise, telling Mensah that he used the brakes sparingly, as recommended. Mensah told plaintiff that pads had to be replaced every 25,000 to 35,000 miles and repeated that the Automobile required new linings or otherwise the problem would become much more serious and expensive. Mensah did not give plaintiff an estimate or advise plaintiff that he was entitled to an estimate.

11.    Plaintiff told Mensah to go ahead. Mensah then told plaintiff that the tires had to be replaced along with a sensor that informed the driver when tire pressure was low. Plaintiff told Mensah to do the work. Mensah told plaintiff that the car would be ready at about 3 p.m. the same day.

12.    Plaintiff arrived at defendant shortly after 3:00 p.m. on March 18, 2016. When he entered the service center he saw Seay and asked him where Robert Mensah was. Seay said that Mensah was not available, but that plaintiff should see the cashier. The cashier gave plaintiff a bill in the amount of $2,084.01, which plaintiff signed and paid by credit card. An employee of defendant told plaintiff that his car was just outside the door. No one discussed the servicing of the Automobile with plaintiff, including the fact that it was dangerous and life-threatening for plaintiff to drive with damaged and leaking tires. No one gave plaintiff the parts of the car that had been replaced or offered to provide plaintiff with the replaced parts. Plaintiff drove away from defendant in his Automobile to his office.

13.    When plaintiff arrived at his office, he saw the warning icon showing low tire pressure was on in the Automobile. There, he noticed for the first time that new tires had not been put on the Automobile. Moreover, the tire that plaintiff had asked defendant to repair was flat. Plaintiff realized that defendant had not fixed the damaged and leaking tire and that he

had been driving on an interstate highway with damaged and leaking tires, which could have caused him serious injury. Plaintiff was very upset and disturbed by that realization. Plaintiff drove to a nearby service station and injected air into both rear tires and the warning icon went off.

14.   Plaintiff telephoned defendant from his office and asked to talk to the service manager. He was connected to Dale Kerns. Plaintiff summarized to Kerns what had happened and made an appointment to see him on Monday, March 21, 2016, at 11:00 a.m.

15.   Plaintiff drove from his office to defendant, where he met with Kerns in his office. Kerns told plaintiff that the sensor for low tire pressure had not been replaced and new tires had not been put on the car because plaintiff had not authorized them. Plaintiff told Kerns that he told Mensah to perform the work. Kerns told plaintiff that there had been a failure of communication. Plaintiff told Kerns that the sensor light was operating in good order and showed him that the sensor light was operating in good order. Plaintiff also told Kerns that he suspected that new brake linings were not required. Plaintiff asked how why no one repaired the leaking tire and how defendant could allow someone to drive off with a damaged and leaking tire without warning him of the danger. Kearns did not respond.

16   Outside, plaintiff started the car and noticed that the sensor that had indicated low tire pressure was not showing that tire pressure was low. Plaintiff showed Kerns that the sensor was working. Kerns acknowledged that fact. Plaintiff departed in the Automobile.

17.   Defendant encourages deceitful and fraudulent actions by its employees and agents by encouraging them to do unnecessary maintenance and repair work by, *inter alia*, paying them commissions based on the total amount of maintenance and repairs they order, and charges excessive and outrageous prices for that work maintenance and repair. Defendant

created an atmosphere and otherwise facilitated a situation in which its employees and agents would and did tell customers that unnecessary repairs and maintenance were required. Defendant's not returning allegedly worn or defective parts that it replaced furthered the performance of excessive, unnecessary, and fraudulent work and failure to do necessary and essential work on the automobiles of plaintiff and others.

18.    Defendant and its employees engaged in the conduct described in paragraph eighteen, *supra*.

## CLAIMS

### COUNT ONE

**Compensatory Damages for Violation of State and County Statutes and Regulations**

19.    Plaintiff realleges paragraphs one through eighteen as though fully set forth herein.

20.    Defendant violated the laws and regulations of the State of Maryland and of Montgomery County by failing to return to plaintiff the replaced brake linings on the Automobile, by failing to tender the replaced brake linings on the Automobile, and by failing to notify plaintiff that he was entitled to be given the brake lining that had been replaced, and by otherwise failing to comply with the laws and regulations of the State of Maryland and of Montgomery County.

### COUNT TWO

**Compensatory Damages for Negligence, Fraud, Misrepresentation, and Negligent and Intentional Infliction of Severe Emotional Distress**

21.    Plaintiff realleges paragraphs one through twenty as though fully set forth herein.

22.    Defendant failed to correct dangerous conditions in a tire of plaintiff's Automobile that he brought to the attention of defendant. Defendant misrepresented that he had checked the condition of the damaged tires. Defendant negligently and recklessly placed plaintiff in imminent danger of serious injury or loss of his life when they failed to warn plaintiff that it did not correct the defects in the tires that plaintiff brought to its attention.

23.    Upon information and belief, defendant and its agents willfully, falsely, and fraudulently told plaintiff that the Automobile needed a new sensor to indicate that there was low tire pressure, new brake linings, and other replacement parts and work, when, in fact, they were not needed.

24.    Defendant and its agents wilfully, recklessly, wantonly, and outrageously failed and refused to fix the leaking tire on plaintiff's Automobile or to warn plaintiff of the great danger of driving on a deflated and damaged tire, thereby putting plaintiff in great danger of serious imminent injury or death. Defendant and its agents failed to warn plaintiff of that danger because they understood and believed that plaintiff had refused to have defendant install a new sensor and replace tires on the Automobile and thereby deprived defendant and its agents of profits and commissions that they would have received if defendant had installed a new sensor and new tires.

25.    Defendant's conduct placed plaintiff in great and imminent danger and inflicted severe emotional distress upon plaintiff when he learned of that danger. Plaintiff was in the zone of physical danger and defendant had undertaken to perform services that would protect plaintiff from harm that could be caused by faults and defects in the Automobile. Defendant's conduct described herein was fraudulent, deceitful, reckless, wonton, predatory, and outrageous. It was foreseeable that defendant's conduct might cause plaintiff immediate and

severe physical harm and emotional distress and defendant's conduct did cause plaintiff severe emotional distress.

## COUNT THREE

### Punitive Damages for Fraudulent, Deceitful, Reckless, Predatory, Wonton, and Outrageous conduct

26.   Plaintiff realleges paragraphs one through twenty-five as though fully set forth herein.

27.   Punitive or exemplary damages against defendant are warranted and necessary to punish defendant for having engaged in fraudulent, deceitful, reckless, predatory, wonton, and outrageous conduct and to deter defendant from engaging in such deceitful, extreme, reckless, predatory, wanton, and outrageous conduct in the future.

## RELIEF DEMANDED

Plaintiff demands judgment from defendant as follows:

A.  Compensatory damages in the amount of $80,000.00.

B.  Punitive damages in the amount of $1,000,000.00.

C.  Attorneys' fees, costs, expenses.

D.  Interest on the judgment from the date of entry.

E.  Such other relief as to the Court may seem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all of the above claims and issues.

Respectfully submitted,

DAVID M. DORSEN
*Pro Se*
Office Address:
2900 K Street, N.W., Suite 500
Washington, DC 20007
Tel: 202-204-3706
FAX: 877-547-2801
Dorsen35@aol.com

February 23, 2017